**In re SEARLES CASTLE ENTERPRISES, INC., Debtor-Appellee.**

**Appeal of ALPHA FUTURA, LTD.**

**Bankruptcy No. 81–9026.**

United States Bankruptcy Appellate Panel for the First Circuit.

Feb. 22, 1982.

William Guy Ferris, Nutter, McClennen & Fish, Boston, Mass., for appellant.

Gerald A. Denmark, Pittsfield, Mass., for debtor-appellee.

Before VOTOLATO, C. J., and LAWLESS and JOHNSON, JJ.

OPINION

LAWLESS, Bankruptcy Judge.

This appeal is taken from an Order of a United States Bankruptcy Judge for the District of Massachusetts, dated June 29, 1981, authorizing the sale of the real and personal property of the Debtor in Possession. 12 B.R. 127.

On March 6, 1981, Searles Castle Enterprises, Inc., the Appellee, filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code. On June 16, 1981, the Appellee requested authorization to sell all of its assets to Atmarse Holding Corporation, or its nominee.

On June 23, 1981, a hearing was held on the Appellee's application to sell all of its assets. The Appellant, Alpha Futura, Ltd., attended this hearing, through counsel, and objected to the proposed sale. Appellant holds seventy-five percent of the stock in Searles Castle Enterprises, Inc.

On June 29, 1981, the Bankruptcy Judge entered an Order authorizing the Appellee to sell, at a private sale, its real estate, personal property and a liquor license to Atmarse Holding Corporation, or its nominee, free and clear, with the exception of certain mortgages to be assumed by the buyer. The Order further provided that the buyer would satisfy the purchase price of $1,470,000.00 (1) by assuming mortgages in the amount of $1,375,000.00,[1] and (2) by making a cash payment of $95,000.00. In his order authorizing the sale, the Bankruptcy Judge concluded that the fair market value of the property was $1,413,000.00.

On July 9, 1981, Appellant filed a notice of appeal of the June 29 Order, together with an Application for Reconsideration and Rehearing of the June 29, Order, as well as an Application for Stay of that Order.

Another hearing was held on July 10, 1981, where it was learned that the sale, which had originally been scheduled for July 1, 1981, had been postponed until July 15, 1981. At this hearing, the Bankruptcy Judge ruled that he would not stay the sale of assets unless the Appellant furnished a surety bond in the amount of $200,000.00 to indemnify the secured and unsecured creditors from possible losses that could result from a delay of the sale. The Appellant did not provide the required bond.

On July 14, 1981, after a third hearing, the Bankruptcy Judge denied the Appellant's two July 9 applications on the ground that the Appellant failed to provide the surety bond.

On July 15, 1981, the sale was consummated and on July 24, 1981, it was confirmed by the Bankruptcy Judge.

The Appellant essentially alleges that the Order of June 29, 1981 was clearly erroneous for the following reasons: (1) the $200,000.00 surety bond required by the Bankruptcy Judge was excessive in the context of this sale; (2) the Bankruptcy Court did not allow Appellant sufficient time to formulate and propose a plan; and (3) the sale amounted to a straight liquidation of the Appellee's business that was repugnant to the concepts of reorganization and rehabilitation under Chapter 11 of the Bankruptcy Code.

■ We must accept the findings of fact by the Bankruptcy Court unless clearly erroneous. First Circuit Rules Governing Appeals from Bankruptcy Judges to District Courts, Appellate Panels and Court of Appeals, Rule 16. *In re Garland*, 6 B.R. 456, 460 (Bkrtcy. 1st Cir. 1980); *see also Commissioner v. Duberstein*, 363 U.S. 278, 291, 80 S.Ct. 1190, 1199, 4 L.Ed.2d 1218 (1960); *Boston and Maine Corp. v. First National Bank of Boston*, 618 F.2d 137, 141 (1st Cir. 1980). The Bankruptcy Court's conclusion that the sale was proper and should not be stayed unless a $200,000.00 bond was posted may be overturned only if an error of law. *See Helvering v. Tex-Penn*, 300 U.S. 481, 491, 57 S.Ct. 569, 573, 81 L.Ed. 755 (1937); *Boston and Maine Corp. v. First National Bank of Boston, supra* at 141.

■ The record indicates that the Appellee spent six months soliciting offers to buy the property before it accepted the offer of Atmarse Holding Corporation. The price that this buyer agreed to pay was approximately $57,000.00 more than the fair market value of the property. Prior to the filing of the Chapter 11 petition the holders of the three mortgages encumbering the property had commenced foreclosure proceedings. After the filing of the petition these mortgagees filed Complaints for Relief from the Automatic Stay, which they intended to prosecute in the event that the

---

1. As part of the sale, two of the mortgagees, Cambios Transamerica, S.A. and Berkshire Investment Corporation, agreed to reduce their mortgages in the aggregate from $1,000,000.00 to $955,000.00.

sale did not take place. If the sale had not gone through and the mortgagees were successful in obtaining relief from the automatic stay, the $57,000.00 excess might well have been lost. Furthermore, it was by no means certain that the secured creditors would have realized the appraised value of the property in a subsequent foreclosure sale. The property consisted of a stone castle structure, a motel, and two large parcels of real estate. The business conducted on the premises relied heavily on the influx of tourists to the area during the summer vacation season. If a sale was not consummated until after the peak tourist season, the short run cash flow would have been reduced and the property would have lost much of its appeal to potential buyers.[2] Consequently, any offers made at a later date might have been for a price substantially lower than the fair market value of the premises. The record discloses that the Bankruptcy Judge was concerned with this possibility when he set the amount of the surety bond. Under the circumstances of this case, his decision to require a $200,-000.00 bond as a precondition to staying a $1,470,000.00 sale was not clearly erroneous. After reviewing all of the evidence, we are not "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). The establishment of a requisite bond to protect the estate from losses pending appeal of the order authorizing the sale is clearly permissible. *See In re Victory Construction Co., Inc.,* 7 B.C.D. 407, 409, 9 B.R. 570 (Bkrtcy.C.D.Cal.1981) (fair and reasonable conditions can be imposed on the stay).

Appellant's contention that it was not given an adequate opportunity to develop a plan is not supported by the record. Appellant argues that since the sale to Atmarse Holding Corporation was delayed, Appellant should have been given additional time to propose an alternative plan. The Appellant was never precluded from proposing a plan during the period in which the sale was delayed. It simply failed to submit such a plan, even though it had an extra 14 days to do so. Under the Bankruptcy Code § 1121(b), the debtor has the exclusive right to file a plan for 120 days from the date of the filing of its Chapter 11 petition. *In re Barker Estates,* 8 B.C.D. 165, 14 B.R. 852 (Bkrtcy.W.D.N.Y.1981). The time limitation protecting this exclusive right expired prior to the sale[3] leaving Appellant approximately two weeks before the sale in which it could have filed a plan. There is no provision in the Bankruptcy Code which guarantees a party in interest the right to file a plan.

Appellant's final argument that Chapter 11 of the Bankruptcy Code does not provide for a sale of all of a debtor's assets, is without merit. *See In re L. N. Scott Company, Inc.,* 7 B.C.D. 1280, 13 B.R. 387 (Bkrtcy.E.D.Pa.1981).

Affirmed.

---

**2.** This conclusion is supported by the evidence in that the buyer entered the premises and operated the business even before the sale was completed in order to obtain the full benefit of the July 4, 1981 holiday weekend.

**3.** The Chapter 11 plan was filed on March 6, 1981. The sale occurred on July 15, 1981.