**In re CENTURIA INTERNATIONAL, INC., Debtor.**

**LEVER BROTHERS COMPANY, Plaintiff, Appellant,**

v.

**CENTURIA INTERNATIONAL, INC., et al., Defendants, Appellees.**

**Appeal No. 82–9021.**

United States Bankruptcy Appellate Panel, for the First Circuit.

Argued Oct. 12, 1982.

Decided Dec. 20, 1982.

---

J. Michael Deasy, Hamblett & Kerrigan, P.A., Nashua, N.H., for plaintiff, appellant.

George W. Walker, Walker & Varney, Wolfeboro, N.H., for defendants, appellees.

Before VOTOLATO, Chief Judge, and JOHNSON and GOODMAN, Bankruptcy Judges.

GOODMAN, Bankruptcy Judge.

Lever Brothers Company (Lever Bros.) appeals from the bankruptcy court's ruling that Kingswood Trust and Savings Bank (Bank) is entitled to certain 8″ copper saute pans in the possession of the debtor at the time the chapter 11 petition was filed.[1] We affirm.

Lever Bros. asserts ownership of the pans pursuant to a sales agreement entered into with the debtor in August of 1978. According to the agreement, the pans were to be shipped by the debtor to customers designated over a period of time. Lever Bros. paid in full for the pans in December, 1978. Additional compensation was to be paid to the debtor for services connected with shipment of the pans to designated customers. The pans were a part of the debtor's general inventory but the number of pans remaining to be sent to customers in accordance with the contract with Lever Bros. was recorded in the debtor's inventory records.

The Bank claims a superior interest in the pans by virtue of a security interest in the debtor's inventory, recorded on January 5, 1981, the perfection of which is undisputed. Lever Bros. has not recorded a financing statement covering these pans. Clearly, if no sale of these pans from the debtor to Lever Bros. took place, the Bank is entitled to the pans pursuant to its perfected security agreement.

Whether a sale has taken place is governed by Article 2 of the Uniform Commercial Code.[2] Section 2–106 defines a sale as "the passing of title from the seller to the buyer for a price." Section 2–401(1) provides that "[t]itle to goods cannot pass under a contract for sale prior to their identification to the contract...." The issue before the bankruptcy court was whether the goods were identified to the contract, and, if so, when.[3] As one of its findings of fact, the bankruptcy court determined that no identification occurred until the pans were removed from the general inventory, repackaged and shipped to the specific cus-

---

1. The debtor, Centuria International, Inc., filed a chapter 11 petition on August 10, 1981. The case was converted to a chapter 7 proceeding on March 2, 1982.

2. N.H.Rev.Stat.Ann. §§ 382–A:2–101 to –725 (1961 & Supp.1982).

3. U.C.C. § 2–501, in pertinent part, provides the manner of identification of goods as follows:

(1) The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the con-

tract refers even though the goods so identified are non-conforming and he has an option to return or reject them. Such identification can be made at any time and in any manner explicitly agreed to by the parties. In the absence of explicit agreement identification occurs

(a) when the contract is made if it is for the sale of goods already existing and identified;

(b) if the contract is for the sale of future goods other than those described in paragraph (c), when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers;

tomers designated from time to time by Lever Bros. Until so designated, the pans remained part of the debtor's general inventory and could be (and, in fact, were) withdrawn and sent to customers in accordance with shipping orders of other companies.

 This court must accept the findings of the bankruptcy judge unless they are clearly erroneous. *In re Searles Castle Enterprises, Inc.,* 17 B.R. 440, 441, 8 B.C.D. 910, 911 (Bkrtcy. 1st Cir.1982); *In re Garland Corp.,* 6 B.R. 456, 460, 3 C.B.C.2d 24, 28 (Bkrtcy. 1st Cir.1980); First Circuit Rules Governing Appeals From Bankruptcy Judges to District Courts and Appellate Panels, Rule 16. A finding is clearly erroneous when, after review of all the evidence, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *In re Searles Castle Enterprises, Inc.,* 17 B.R. at 442, 8 B.C.D. at 912. We are not left with such a conviction. On the record before us there is ample support for the bankruptcy judge's finding that identification occurred only when the pans were specifically designated for Lever Bros.' customers. The evidence indicates no physical segregation occurred prior to that time, nor was the merchandise tagged or marked in any way as belonging to Lever Bros. In fact, there is no evidence that the pans which are the subject of this dispute were even in existence at the time of the original sales contract. While we recognize that other methods of identification exist, the record on appeal does not persuade us that the findings of the court below are clearly erroneous.[4]

The Order of the Bankruptcy Court is affirmed.

---

4. Appellant argues that the debtor's inventory records constitute identification under section 2–501(1) according to an "explicit agreement" between the parties. No such agreement is evident from the record and certainly is not "explicit." Appellant also argues that the pans are fungible goods and identification occurred at the time the sales contract was made. There is no indication from the record before us that this argument was presented to the bankruptcy court. No exceptional or peculiar circumstances are present which persuade us to deviate from the general principle that we will not consider a theory not urged upon or considered by the trial court. *See United States v. Parrilla Bonilla,* 648 F.2d 1373, 1386 (1st Cir.1981); *Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 894 (1st Cir.1979); *Dobb v. Baker,* 505 F.2d 1041, 1044 (1st Cir.1974); *see also In re Rea Holding Corp.,* 2 B.R. 733, 737, 5 B.C.D. 1308, 1310 (Bkrtcy.S.D.N.Y.1980). Neither is this new ground so compelling as to virtually insure appellant's success. *Johnston v. Holiday Inns, Inc.,* 595 F.2d at 894; *Dobb v. Baker,* 505 F.2d at 1044. For example, one of the elements upon which appellant relies to prove its theory is that the contract for sale refers to an "identified fungible bulk." U.C.C. 2–501 official comment 5. *See* Brief for Appellant at 12–13. On the record before us, it is arguable that the contract for sale does *not* refer to an "identified fungible bulk." *See Reeves v. Pillsbury Co.,* 229 Kan. 423, 625 P.2d 440 [32 U.C.C.Rep. 87] (1981).